Andrew T. Solomon
Gretchen S. Silver
SULLIVAN & WORCESTER LLP
1290 Avenue of the Americas, 29th Fl.
New York, NY 10104
(212) 660-3000

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- x
                                :

PROFESSIONAL OFFSHORE
OPPORTUNITY FUND, LTD., a company       :    11-cv-04321-LAK
registered under the laws of the British Virgin
Islands,
                                :

            Plaintiff,                :

    -against-                    :    **DECLARATION OF**
                                     **HOWARD BERGER**

HUIFENG BIO-PHARMACEUTICAL
TECHNOLOGY, INC., a Nevada corporation,   :

           Defendant.          :

                                :
-------------------------------------------------------------------- x

       HOWARD BERGER, pursuant to 28 U.S.C. § 1746, declares:

       1.      I am the manager of the investment manager of plaintiff Professional Offshore

Opportunity Fund, LTD. ("PROOF" or the "Fund"). I make this declaration in support of

plaintiff's motion for summary judgment. I state the following based upon my personal

knowledge, except where stated upon information and belief.

       2.      PROOF is incorporated in the British Virgin Islands ("BVI") as an International

Business Company. Attached hereto as Exhibit A is true copy of PROOF's Certificate of

Incorporation.

       3.      PROOF's administrator in the BVI is Folio Administrators Limited ("Folio"),

which provides administrative and managerial services to the Fund pursuant to an Administrative

Services Agreement dated July 7, 2005 (the "Administrative Services Agreement").  Annexed

hereto as Exhibit B is a true copy of the Administrative Services Agreement.  Folio also

maintains the Fund's principal financial books and records in the BVI.

4.       PROOF's investment manager is Professional Offshore Traders Management,

LLC ("POTM"), a New York limited liability company located in Westbury, New York that is

authorized to do business in the State of New York.  From its New York office, POTM directs

PROOF's investments, which are primarily in micro-capitalized companies located throughout

the United States and in foreign countries.

5.       PROOF has no employees in New York, and neither leases nor owns property in

New York.

6.       In December 2007, defendant Huifeng Bio-Pharmaceutical, Inc. ("HFGB") issued

a Secured Convertible Promissory Note to PROOF in the principal amount of $1,500,000 (the

"Note").

7.       The Note selects New York law as its exclusive governing law.  [Note § 12].

8.       Under the terms of the Note, HFGB agreed to pay PROOF interest quarterly at the

rate of ten percent per annum, which HFGB could pay in cash or by issuing freely tradable stock

to PROOF.  [Note § 1(a)].  HFGB did not have the option to pay principal with stock, and all

principal was due and payable on the "Maturity Date" of December 31, 2009.  [Note § 1(b)].

9.       HFGB was unable to pay the principal on the Maturity Date of December 31,

2009.

10.      In order to avoid a default on the payment of principal on the Note, the parties

amended the Note pursuant to the Amendment to Secured Convertible Promissory Notes and

Warrants, dated December 24, 2009 (the "Amendment").

11.     In June 2010, the parties entered into the Settlement Agreement and Release. Annexed hereto as Exhibit C is a true copy of the Settlement Agreement and Release.  At the time of the Settlement Agreement and Release, HFGB's CEO, Jing An Wang, was in default on his obligation to cause the release of 1,400,000 escrowed shares to PROOF under a certain Escrow Agreement dated December 17, 2007.

12.     At the time of the Settlement Agreement and Release there was no dispute as to Mr. Wang's obligation to release the 1,400,000 shares.  But, mechanically, to effectuate the transfer of the shares with the transfer agent, Mr. Wang and HFGB had to cooperate and sign certain documents.

13.     For no reason other than hold-up leverage, Wang and HFGB refused to perform under the Escrow Agreement and release the shares, even though the conditions for release were undisputed.

14.     Rather than incur the expense of litigation, PROOF and other note holders agreed to permit HFGB more time to reach the net income thresholds, which would have permitted Wang to maintain ownership of some of the Escrowed Shares.

15.     Under the Settlement Agreement, HFGB and Wang permitted 900,000 shares to be release to PROOF and other note holders, of which PROOF received 675,000 shares. [Settlement Agreement § 3(a)].

16.     Before and after the Settlement Agreement, HFGB had been making payments to PROOF under the Amendment.

17.     The Amendment extended the maturity date of the Note to June 30, 2011. [Amendment § 1(a)]. The Amendment also provided for the repayment of principal according to

a set schedule. [Amendment § 1(b)]. Starting on April 30, 2010 and on the last day of each

month thereafter, HFGB promised to pay PROOF a certain percentage of the principal amount

due plus 10% interest on the outstanding principal amount associated with each payment. [RFA

Response No. 19]. (To calculate the accrued interest on each payment I took the product of the

scheduled principal payment, the number of days outstanding, and the interest rate of 10% over

365 days).

18.     Under the Amendment, HFGB had the option of paying *interest* in cash or freely

tradable stock. [Note § 1(a); Amendment § 1(b)]. In fact, following the execution of the

Amendment, HFGB never issued any freely tradable securities to pay its interest obligation.

19.     The Amendment, which was effective as of December 24, 2009, states that HFGB

owed PROOF $1,500,000 in principal on the Notes. [Complaint Ex. B]. Pursuant to Section

1(b) of the Amendment, HFGB agreed to repay the principal amount of the Note in accordance

with the schedule annexed hereto as Exhibit D.

20.     As consideration for the Amendment, HFGB agreed to issue 375,000 shares of

common stock to PROOF. [Amendment ¶ 3]. The 375,000 shares granted pursuant to the

Amendment constituted *additional consideration* and did not reduce HFGB's obligations to

PROOF under the Note and Amendment. [*Id.*] Accordingly, in HFGB's Form 10-K for the

fiscal year ended 12/31/2009, it disclosed this transaction as follows: "On December 24, 2009,

the Company issued 450,000 shares of common stock to the Note holders in consideration of

entering into the amendment of the Notes having a fair value of $445,500. The value of the

common stock issued was determined based the closing market price of $0.99 per share on

December 24, 2009." Annexed hereto as Exhibit G is a true copy of the HFGB's Form 10-K for

the fiscal year ended 12/31/09. The 450,000 shared described in the Form 10-K announcement

matches the description of shares issued on Exhibit A to the Amendment

21.    From April 1, 2010 (the first payment date under the Amendment) through March 2011 (the default month), HFGB paid PROOF the aggregate sum of $938,450.91. The schedule annexed hereto as Exhibit E accurately details the dates of payment and the amounts paid by HFGB.

22.    Interest on the payments under the Amendment accrued at 10% per annum from the date of the Amendment to the payment date. [Amendment § 1(B)]. HFGB made no interest payments under the Amendment, although in some months it overpaid scheduled principal, which PROOF applied to interest. The schedule annexed hereto as Exhibit F accurately sets out HFGB's payments, the scheduled payment amounts, the accrued interest, and any over- or under-payment, which PROOF applied to principal.

23.    HFGB defaulted under the Note and Amendment by failing to make the final three scheduled principal payments. PROOF's counsel sent a demand letter [Complaint Ex. C], which HFGB received [RFA 17] but took no responsive action. Giving due account to the $938,450.91 paid by HFGB pursuant to the Note and Amendment, in summary, the unpaid principal under the Note (the last three payments) is $577,500. The interest shortfall from the prior payments is $67,151.14.

24.    In addition to the unpaid principal of $577,500 and the prior interest shortfall of $67,151.14, PROOF is entitled to default interest at the rate of 15% from the date of default (April 30, 2011) to the date of payment [Note § 8] and attorneys' fees for the costs of enforcement [*Id.* at § 11]. The April 2011 payment was due on April 30, 2011. Pre-default contractual interest accrued on the principal outstanding balance at the rate of 10% per annum from March 31, 2011 to April 30, 2011, $4,812.50 ($577,500 x .10/12), and default interest

began to accrue from April 30, 2011 until the date of judgment in the per diem amount of

$237.32 ($577,500 x .15/365).

    I declare under penalty of perjury that the foregoing is true and correct.

Dated: Westbury, New York
       November 1, 2011

_____
                    Howard Berger