UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x
                                                                     :
PROFESSIONAL OFFSHORE                                                :
OPPORTUNITY FUND, LTD., a company
registered under the laws of the British Virgin                      :
Islands,
                                                                     :
                                                                                                                                                                                     11-cv-04321-LAK
               Plaintiff,
                                                                     :
   -against-
                                                                     :
HUIFENG BIO-PHARMACEUTICAL
TECHNOLOGY, INC., a Nevada corporation,                              :

               Defendant.                                    :

                                                                     :
-------------------------------------------------------------------- x


**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**


                                                             SULLIVAN & WORCESTER LLP
                                                                  Andrew T. Solomon
                                                                  Gretchen S. Silver
                                                     1290 Avenue of the Americas, 29th Fl.
                                                     New York, NY 10104
                                                     (212) 660-3000

                                                     *Attorneys for Plaintiff*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

I.   INTRODUCTION ............................................................................................................. 1

II.  PROCEDURAL HISTORY ............................................................................................... 2

III. STATEMENT OF UNDISPUTED FACTS ...................................................................... 3

IV.  ARGUMENT ..................................................................................................................... 6

    A. STANDARDS ON MOTION FOR SUMMARY JUDGMENT ....................................... 6

    B. PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON ITS BREACH OF
       PROMISSORY NOTE CLAIM ......................................................................................... 7

    C. DEFENDANT CANNOT AVOID SUMMARY JUDGMENT BASED ON ITS
       AFFIRMATIVE DEFENSES ............................................................................................ 8

V.   CONCLUSION ................................................................................................................ 14

# TABLE OF AUTHORITIES

Cases

*Alicanto, S.A. v. Woolverton*,
  129 A.D.2d 601, 514 N.Y.S.2d 96 (2d Dep't 1987) .................................................................. 11

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242, 106 S.Ct. 2505 (1986) ........................................................................................ 7

*Arrowood Indem. Co. v. Gibson & Behman, P.C.*,
  2011 WL 1796045 (S.D.N.Y. April 29, 2011) ......................................................................... 7

*Bennell Hanover Assocs. v. Neilson*,
  215 A.D.2d 710, 627 N.Y.S.2d 439 (2d Dep't 1995) ............................................................ 13

*Brady v. Town of Colchester*,
  863 F.2d 205 (2nd Cir. 1988) .................................................................................................. 8

*Capital Funding Svcs., Inc. v. Focus Real Estate Mgt., Inc.*,
  259 A.D.2d 510, 686 N.Y.S.2d 104 (2d Dep't 1999) ............................................................ 10

*Celotex Corp. v. Catrett*,
  477 U.S. 317, 106 S.Ct. 2548 (1986) ........................................................................................ 8

*Colonial Mortg. Co. v First Fed. Sav. & Loan Ass'n of Rochester*,
  57 A.D.2d 1046, 395 N.Y.S.2d 798 (4th Dep't 1977) ............................................................ 9

*Constr. Specialties, v. Hartford Ins. Co.*,
  97 A.D.2d 808, 468 N.Y.S.2d 675 (2d Dep't 1983) ............................................................... 9

*Dayton Superior Corp. v. Spa Steel Products, Inc.*,
  2010 WL 3825619 (N.D.N.Y. Sept. 25, 2010) ...................................................................... 12

*Fine Arts Enterprises, N.V. v. Levy*,
  149 A.D.2d 795, 539 N.Y.S.2d 827 (3d Dep't 1989) ......................................................... 9, 10

*Friedman v. Hyperion Assocs.*,
  157 A.D.2d 963, 550 N.Y.S.2d 221 (3d Dep't 1990) ............................................................ 13

*Goldberg & Connolly v. New York Cmty. Bancorp, Inc.*,
  565 F.3d 66 (2d Cir. 2009) ...................................................................................................... 7

*Hasbro Bradley v. Coopers & Lybrand*,
  128 A.D.2d 218, 515 N.Y.S.2d 461 (1st Dep't 1987) .......................................................... 12

*Int'l Fuel & Iron Corp. v. Donner Steel*,
  Corp., 242 N.Y. 224, 151 N.E. 214 (1926) ............................................................................. 9

*James v. New York Racing Ass'n*,
   233 F.3d 149 (2d Cir. 2000) .................................................................................................. 7

*Klein v. New York University*,
   786 F.Supp.2d 830 (S.D.N.Y. 2011) ..................................................................................... 8

*Lamb v. Emhart Corp.*,
   47 F.3d 551 (2d Cir. 1995) .................................................................................................. 11

*Lau v. Mezei*,
   2011 WL 4501942 (S.D.N.Y. September 29, 2011) ............................................................ 7

*Lehman Bros. Holdings Inc. v. Walji*,
   2011 WL 1842838 (S.D.N.Y. May 11, 2011) ...................................................................... 7

*Manshion Joho Ctr. Co., Ltd. v. Manshion Joho Ctr., Inc.*,
   24 A.D.3d 189, 806 N.Y.S.2d 480 (1st Dep't 2005) .......................................................... 12

*Manufacturers & Traders Trust Co. v. Franz*,
   46 A.D.2d 161, 361 N.Y.S.2d 782 (4th Dep't 1974) ............................................................ 6

*Mayatextil, S.A. v. Liztex U.S.A, Inc.*,
   1993 WL 51094 (S.D.N.Y. Feb. 24, 1993) ......................................................................... 11

*Neth. Shipmortgage Corp. v. Madias*,
   717 F.2d 731 (2d Cir. 1983) ........................................................................................ 9, 10, 11

*Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*,
   269 F.3d 114 (2d Cir. 2001) .................................................................................................. 8

*Novick v. AXA Network, LLC*,
   2009 WL 2753201 (S.D.N.Y. Aug. 27, 2009) ...................................................................... 7

*Patel v. Orma*,
   190 A.D.2d 782, 593 N.Y.S.2d 851 (2d Dep't 1993) ......................................................... 11

*Quanta Specialty Lines Ins. Co. v. Investors Capital Corp.*,
   2008 WL 1910503 (S.D.N.Y. Apr. 30, 2008) ..................................................................... 10

*Raskin v. Wyatt Co.*,
   125 F.3d 55 (2d Cir. 1997) .................................................................................................... 8

*Schiavone Const. Co. v. City of New York*,
   99 F.3d 546 (2d Cir.1996) ..................................................................................................... 7

*Schwarz v. ThinkStrategy Capital Management LLC*,
   __ F.Supp.2d __, 2011 WL 2732218 (S.D.N.Y. July 14, 2011) ....................................... 6-7

*Seward & Kissel v. Smith Wilson Co., Inc.*,
   814 F.Supp. 370 (S.D.N.Y. 1993) ......................................................................................... 13

*Torres & Leonard, P.C. v. Select Professional Realties, Ltd.*,
   118 A.D.2d 467, 499 N.Y.S.2d 707 (1st Dep't 1986) .................................................................. 6

*Virgin At. Airways Ltd. v. British Airways PLC*,
   257 F.3d 256 (2d Cir. 2001)................................................................................................ 8

*Von Arx, A.G. v. Breitenstein*,
   52 A.D.2d 1049, 384 N.Y.S.2d 895 (4th Dep't 1976),................................................................ 9

*White v. ABCO Eng'g Corp.*,
   221 F.3d 293 (2d Cir. 2000)................................................................................................ 7

*Woods v. Interstate Realty Co.*,
   337 U.S. 535, 69 S.Ct. 1235 (1949)..................................................................................... 9

Statutes

28 U.S.C. § 1404(a) ............................................................................................................... 3

CPLR 302................................................................................................................................ 9

CPLR 3015............................................................................................................................. 13

N.Y. B.C.L. § 102(7) .............................................................................................................. 8

N.Y. B.C.L. § 1312 ..................................................................................................... 1, 8, 9, 10

N.Y. Gen. Oblig. Law § 5-1401 (McKinney 2007)......................................................................... 7

Rules

Fed. R. Civ. P. 8(c) ................................................................................................................ 2

Fed. R. Civ. P. 15................................................................................................................. 14

Fed. R. Civ. P. 56........................................................................................................... 1, 6, 7

Plaintiff Professional Offshore Opportunities Fund, LTD ("PROOF") respectfully submits this memorandum of law in support of its motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## I.     INTRODUCTION

This is an action to enforce a defaulted $1,500,000 Secured Convertible Promissory Note that defendant Huifeng Bio-Pharmaceutical Technology, Inc. ("HFGB") issued to PROOF in or about December 2007 (the "Note").

Most of PROOF's *prima facie* case for summary judgment is expressly admitted by HFGB in either its answer or response to PROOF's request to admit.  The only point that HFGB even makes an effort to contest is the default, claiming that the Note was somehow satisfied through the issuance of common stock to PROOF or through an "accord and satisfaction."  But these points of contention are easily neutralized by the clear and unambiguous terms of the relevant agreements and the undisputed facts.

In a dire attempt to stave off summary judgment, HFGB has raised eleven affirmative defenses, consisting of a motley combination of non sequiturs, legal conclusions, and otherwise wanting defenses clearly lacking a critical element of proof.  A summary of these defenses and their defects is as follows:

- The first defense for lack of capacity under N.Y. B.C.L. § 1312 is easily disproved by incontestable evidence showing that PROOF's contacts with New York are not "permanent, continuous, and regular."

- The second defense is "for failure to state a claim" and has no bearing here, where the issue is not whether PROOF has stated a claim (it has), but whether it has proven one (it has).

- The third defense is for "accord and satisfaction," a defense that HFGB has not properly alleged, and, in any event, is barred by the applicable documents.

- The fourth defense is for "unclean hands," which is an equitable defense that is irrelevant to a legal claim to enforce a note.

- The fifth defense is pleaded as bare legal conclusions of "release, failure of consideration and set off." These legal conclusions, unsupported by facts, are not only improperly stated as a pleading matter, but insufficient to defeat summary judgment.

- The sixth defense is that PROOF does not hold an original of the note. An original is not required, but the defense is otherwise moot since HFGB has admitted the Note's genuineness.

- The seventh defense is that PROOF suffered "no ascertainable loss." That is not a cognizable defense to a note enforcement claim.

- The eighth defense is based on PROOF's supposed failure to mitigate its damages. That too is not a cognizable defense to a note enforcement claim. The note represents a unilateral obligation of HFGB to pay PROOF the amounts due.

- The ninth defense alleges that the amount demanded in the complaint is incorrect. That is not an "affirmative defense," but the point is well taken and PROOF has provided an updated calculation of damages with this motion.

- The tenth defense claims that PROOF will gain an "unjust enrichment" if the note is enforced. This is not a cognizable defense to a note enforcement action.

- The eleventh defense reserves the right to amend the answer. That is simply not a defense.

## II.   PROCEDURAL HISTORY

PROOF commenced this action on June 7, 2011 to enforce a promissory note against HFGB. On July 29, 2011, HFGB answered the complaint.

On October 7, 2011, counsel for the parties appeared for an initial conference before the Court. As it was self-evident that HFGB's answer had failed to plead the affirmative defenses with sufficient detail to meet the requirements of Rule 8(c) of the Federal Rules of Civil Procedure, the Court suggested, and counsel for plaintiff agreed, that HFGB could file an Amended Answer.

2

On October 21, 2011, HFGB filed its Amended Answer and Affirmative Defenses. It also contemporaneously filed a motion to transfer venue under 28 U.S.C. § 1404(a).[1]

PROOF now brings this motion for summary judgment.

### III.    STATEMENT OF UNDISPUTED FACTS[2]

PROOF is an offshore pooled investment vehicle incorporated under the laws of the British Virgin Islands ("BVI") as an International Business Company. [SOF ¶ 1]. PROOF is administered and managed by a BVI-registered administrator, Folio Administrators Limited, which holds PROOF's principal financial books and records in the BVI. [SOF ¶ 2]. The investment manager for PROOF is Professional Offshore Traders Management, LLC ("POTM"), which is authorized to do business in New York and maintains its offices in Westbury, New York. [SOF ¶ 3]. PROOF's business is principally to invest in micro-cap corporations throughout the United States and to a lesser extent worldwide. [SOF ¶ 3]. It neither owns nor leases property in New York and has no employees here. [*Id.*]

In December 2007, PROOF—along with a number of other investors—acquired the Note from HFGB, which is a Nevada corporation with its principal place of business in China. [SOF ¶ 4-5]. PROOF acquired the Note pursuant to a certain Securities Purchase Agreement made as of December 17, 2007. [Answer Ex. A].

The original maturity date of the Note was December 31, 2009. [SOF ¶ 7]. HFGB, however, was either unable or unwilling to pay the $1,500,000 balloon payment of principal due

---

[1] The transfer motion is a dilatory tactic, as if a Chinese company could credibly show that the inconvenience of litigating in Manhattan over Brooklyn or Long Island is sufficient to overcome plaintiff's choice of forum.

[2] All citations to evidence refer to the accompanying Rule 56.1 Statement of Facts ("SOF") or directly to the pleadings and their respective exhibits, which are attached to the accompanying Declaration of Andrew T. Solomon dated November 1, 2011.

3

on the Note on the maturity date, so HFGB requested and PROOF (with other holders) agreed to extend the maturity date to December 31, 2009, pursuant to a certain Amendment to Secured Convertible Promissory Note and Warrants effective as of December 24, 2009 (the "Amendment").  [SOF ¶¶ 8-9, 18].

The principal features of the Amendment are as follows:

> (i) the maturity date was extended to June 30, 2011;
>
> (ii) the $1,500,000 principal payments were to be made in monthly installments calculated as a stated percentage of the principal;
>
> (iii) interest at 10 percent per annum was to be paid monthly with each principal payment;
>
> (iv) HFGB could pay interest with cash or freely tradable securities, but principal had to be paid in cash.[3]

[Amendment ¶ 1].  As consideration for the Amendment (not in repayment of the Note), HFGB issued PROOF and other holders of the Note additional common shares, as set forth on Exhibit A to the Amendment.  [SOF ¶ 19].  PROOF, for its share, received 375,000 shares.  [*Id.*].

Under the Amendment, HFGB's first payment of principal and interest was due on April 30, 2010 (for the month of April) with each subsequent payment due on the last day of each successive month.  [SOF ¶ 16].  From April 2010 through March 2011, HFGB roughly met its monthly payment obligation.  [SOF ¶¶ 20-21].

Wholly apart from HFGB's obligations under the Note and Amendment, in June 2010, HFGB's principal, Jing An Wang, found himself in default on his side obligation to cause the release of 1,400,000 common shares of HFGB to PROOF and the other note holders.  [SOF ¶

---

[3] This of course excludes conversions under the Note, which are not relevant here.

4

10].[4]  Wang's obligation was triggered by HFGB's failure to meet certain net income hurdles, and the conditions for release were undisputed. [SOF ¶ 10-11]. But Wang and HFGB had hold-up leverage, since their consent was required to effectuate the transfer of shares through HFGB's transfer agent. [SOF ¶¶ 11-12]. Rather then incur the expense of litigation, PROOF and the other note holders agreed to allow HFGB more time to meet the net income thresholds, provided that HFGB and Wang released a portion of the 1,400,000 shares then held in escrow. [SOF ¶ 13].

To memorialize the settlement over the 1,400,000 escrowed shares, HFGB, Wang and the note holders executed a certain Settlement Agreement and Release (the "Settlement Agreement"). [SOF ¶ 10]. Under the Settlement Agreement, Wang and HFGB released 900,000 shares to PROOF and the other note holders (PROOF received 675,000), with the balance of the shares to be held in escrow pending future events. [SOF ¶ 14]. By its terms, the Settlement Agreement had no impact on HFGB's payment obligations to PROOF under the Note and Amendment, confirmed also by the fact that HFGB made payments to PROOF under the Amendment before and after the Settlement Agreement. [SOF ¶ 15].

In default under the Note and Amendment, HFGB made no payments to PROOF in April and May 2011. [SOF ¶ 20]. As of the date of the last payment, March 21, 2011, HFGB owed PROOF unpaid principal and interest in the amount of $644,651.14, consisting of $577,500 in future unpaid installments of principal and $67,151.14 in the aggregate of prior underpayments of interest. [SOF ¶¶ 21-22].

---

[4] The nature of Wang's side obligation is as set forth in the Escrow Agreement, which is attached as Exhibit B to the Answer. Under that Agreement, Wang agreed to place 1,400,000 shares of HFGB into escrow, which were to be released to the note holders (PROOF included) in the event that HFGB's net income did not clear certain hurdles.

5

On May 17, 2011, PROOF's counsel sent a notice of default and acceleration to HFGB. [SOF ¶ 22]. HFGB did not respond. [*Id.*].

Therefore, the amount due from HFGB to PROOF can thus be summarized as follows:

> (i) unpaid scheduled installments of principal (April – June 2011): $577,500;
>
> (ii) interest on the unpaid principal at the rate of 10 percent per annum from March 31, 2011 to the date of default (April 30, 2011);
>
> (iii) interest on the unpaid principal at the default rate of 15 percent per annum (*see* Note § 8) from April 30, 2011 to the date of judgment;
>
> (iv) underpayment of past interest in the amount of $67,151.14;
>
> (v) costs of enforcement, including attorneys' fees, in an amount to be determined.[5]

## IV. ARGUMENT

### A. STANDARDS ON MOTION FOR SUMMARY JUDGMENT

Under Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The standards on a motion for summary judgment are familiar to this Court:

> Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. In considering a motion for summary judgment, the Court's role " 'is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party.' " Summary judgment should be granted only where no reasonable trier of fact could find in favor of the nonmoving party.

---

[5] Provision in promissory note awarding attorneys' fees is enforceable under New York law. *Torres & Leonard, P.C. v. Select Professional Realties, Ltd.*, 118 A.D.2d 467, 469, 499 N.Y.S.2d 707, 709 (1st Dep't 1986); *Manufacturers & Traders Trust Co. v. Franz*, 46 A.D.2d 161, 163, 361 N.Y.S.2d 782, 784 (4th Dep't 1974).

6

*Schwarz v. ThinkStrategy Capital Management LLC*, __ F.Supp.2d __, 2011 WL 2732218 at *2 (S.D.N.Y. July 14, 2011).[6]

### B.   PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON ITS BREACH OF PROMISSORY NOTE CLAIM

The parties to the Note agreed that New York's law would govern any claim arising out of or relating to the Note [SOF ¶ 6], and this provision is binding under New York law. *Schiavone Const. Co. v. City of New York*, 99 F.3d 546, 548 (2d Cir.1996); see also N.Y. Gen. Oblig. Law § 5-1401 (McKinney 2007).

In order to establish a *prima facie* case for breach of a promissory note, a movant must "provide proof of the valid note and of defendant's failure, despite proper demand, to make payment."  *Lau v. Mezei*, 2011 WL 4501942, at *2 (S.D.N.Y. September 29, 2011) (quoting *Lehman Bros. Holdings Inc. v. Walji,* 2011 WL 1842838, at *3 (S.D.N.Y. May 11, 2011); and citing *Arrowood Indem. Co. v. Gibson & Behman, P.C.*, 2011 WL 1796045, at *2 (S.D.N.Y. April 29, 2011); and *Novick v. AXA Network, LLC*, 2009 WL 2753201, at *1 (S.D.N.Y. Aug. 27, 2009)).

PROOF has established its *prima facie* case.  The validity of the Note, the demand for payment, and defendant's non-payment are established by admissible evidence.  [SOF ¶¶ 5, 9, 20-23].

The burden now shifts to defendant to show with specific evidentiary materials that a genuine issue of fact exists. Fed. R. Civ. P. 56(c)(1)(A).  This is, however, an impossible burden given HFGB's admissions and the insurmountable evidence submitted in support of the motion.

---

[6] Citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505 (1986); *White v. ABCO Eng'g Corp.*, 221 F.3d 293, 300 (2d Cir. 2000); *Goldberg & Connolly v. New York Cmty. Bancorp, Inc.*, 565 F.3d 66, 71 (2d Cir. 2009); and *James v. New York Racing Ass'n*, 233 F.3d 149, 152 (2d Cir. 2000).

**C.     DEFENDANT CANNOT AVOID SUMMARY JUDGMENT BASED ON ITS AFFIRMATIVE DEFENSES**

It is not necessary for a plaintiff to disprove that defendant's affirmative defenses are "wholly frivolous." *Brady v. Town of Colchester*, 863 F.2d 205, 210 (2nd Cir. 1988). Defendants have the ultimate burden of proof on affirmative defenses, therefore, on summary judgment, it is ordinarily

> sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim. In that event, the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment.

*Klein v. New York University*, 786 F.Supp.2d 830, 841-82 (S.D.N.Y. 2011).[7] With the standard thus stated, we address each of defendant's eleven affirmative defenses:

1.     HFGB's first affirmative defense is under New York's "Door Closing" statute, N.Y. B.C.L. § 1312, and alleges that this action "is prohibited because [PROOF] is a foreign corporation ... doing business in New York State without authority." [Answer at ¶ 14].[8]

BCL § 1312(a) provides:

> A foreign corporation doing business in this state without authority shall not maintain any action or special proceeding in this state unless and until such corporation has been authorized to do business in this state and it has paid to the state all fees and taxes imposed under the tax law or any related statute, as defined in section eighteen hundred of such law, as well as penalties and interest charges related thereto, accrued against the corporation. This prohibition shall apply to any successor in interest of such foreign corporation.

---

[7] Citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548 (1986); *Virgin At. Airways Ltd. v. British Airways PLC*, 257 F.3d 256, 273 (2d Cir. 2001); *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 269 F.3d 114, 123-24 (2d Cir. 2001); and *Raskin v. Wyatt Co.*, 125 F.3d 55, 65-66 (2d Cir. 1997).

[8] We defer for the purpose of this motion whether in fact plaintiff qualifies as a "Foreign Corporation" as defined under N.Y. B.C.L. § 102(7). The point is academic because defendant cannot demonstrate that plaintiff is required to obtain authorization under the BCL in order to have access to New York courts.

The section does not raise a jurisdictional bar, but affects "the legal capacity of a foreign corporation doing business in New York without authorization to maintain an action in New York courts." *Neth. Shipmortgage Corp. v. Madias*, 717 F.2d 731, 735 (2d Cir. 1983). In a diversity case, such as here, this limitation affects access to federal courts sitting in the state as well. *Id.* (citing *Woods v. Interstate Realty Co.*, 337 U.S. 535, 69 S.Ct. 1235 (1949)).

Despite its expansive language, "not all business activity engaged in by a foreign corporation constitutes doing business in New York." *Neth. Shipmortgage*, 717 F.2d at 735-36 (citing *Von Arx, A.G. v. Breitenstein*, 52 A.D.2d 1049, 384 N.Y.S.2d 895 (4th Dep't 1976), *aff'd mem.*, 41 N.Y.2d 958, 394 N.Y.S.2d 876 (1977)). Rather, to be impacted by § 1312,

> the foreign corporation must do more than make a single contract, engage in an isolated piece of business, or an occasional undertaking; it must maintain and carry on business with some continuity of act and purpose.

717 F.2d at 736 (quoting *Int'l Fuel & Iron Corp. v. Donner Steel Corp.,* 242 N.Y. 224, 230, 151 N.E. 214, 215 (1926)).

The burden of demonstrating that § 1312 applies rests with the defendant. *Constr. Specialties, v. Hartford Ins. Co.,* 97 A.D.2d 808, 468 N.Y.S.2d 675, 676 (2d Dep't 1983). Moreover, "there is a presumption that a foreign corporation does business in the state of its incorporation and not in New York." *Fine Arts Enterprises, N.V. v. Levy*, 149 A.D.2d 795, 796, 539 N.Y.S.2d 827, 829 (3d Dep't 1989). The presumption is rebuttable, but it is a high bar; the defendant must show a greater amount of local activity by a foreign corporation than the "doing business" standard applicable under New York's long-arm statute (CPLR 302) relating to personal jurisdiction (*Colonial Mortg. Co. v First Fed. Sav. & Loan Ass'n of Rochester*, 57 A.D.2d 1046, 1047, 395 N.Y.S.2d 798, 799 (4th Dep't 1977)), and only upon showing that the foreign company has "permanent, continuous, and regular" New York contacts (*Neth.*

9

*Shipmortgage*, 717 F.2d 731, 736 (2d Cir. 1983).  Finally, a defendant cannot defeat summary judgment simply by raising the defense, as a mere conclusion, and claiming that discovery, which could have already been had, might reveal additional New York activities in support of the defense.  *See Fine Arts*, 149 A.D.2d at 796, 539 N.Y.S.2d at 829; *Capital Funding Svcs., Inc. v. Focus Real Estate Mgt., Inc.*, 259 A.D.2d 510, 511, 686 N.Y.S.2d 104, 105 (2d Dep't 1999).

It is plain that PROOF is not subject to N.Y. B.C.L. § 1312.  PROOF is an offshore hedge fund organized under the laws of the British Virgin Islands.  [SOF ¶ 1].  It neither maintains an office nor owns real estate here.  [SOF ¶ 3].  PROOF's only New York contact is the location of its manger, Professional Offshore Traders Management, LLC [SOF ¶ 3].  Its principal books and administrative records are maintained in the BVI by its administrator.  [SOF ¶ 2].  As a business, it loans money to and invests in the securities of microcap companies all over the United States and, in some cases, the world.  [*Id.*]  The loan at issue here, for example, was made to a Nevada company that operates out of offices in China.  [SOF ¶ 4].

These contacts, taken as a whole, are not even close to what is required to invoke the capacity restrictions of N.Y. B.C.L. § 1312.  *See, e.g., Neth. Shipmortgage Corp. v. Madias*, 717 F.2d 731 (2d Cir. 1983) (bank account in New York and 19-20 loans to New York residents, which partially closed in New York over a two-year period insufficient to require business authorization in New York).  *Quanta Specialty Lines Ins. Co. v. Investors Capital Corp.,* 2008 WL 1910503, *9 (S.D.N.Y. Apr. 30, 2008) ("That Quanta maintains its principal place of business in New York is not enough to constitute systematic intrastate activity under § 1312"); *Fine Arts*, 149 A.D.2d at 796, 539 N.Y.S.2d at 829 (no evidence that plaintiff was "doing business" in New York for purposes of N.Y. B.C.L. § 1312, despite plaintiff having a New York address and bank account and that the contract at issue was executed and performed in New

York); *Mayatextil, S.A. v. Liztex U.S.A, Inc.*, 1993 WL 51094 *7 (S.D.N.Y. Feb. 24, 1993) ("actively sending sales agents into New York to solicit sales does not constitute doing business"); *Alicanto, S.A. v. Woolverton*, 129 A.D.2d 601, 603, 514 N.Y.S.2d 96, 98 (2d Dep't 1987) (foreign company not "doing business" despite maintaining "an office and two bank accounts in New York" and employing New York counsel).

  2. HFGB's second affirmative defense is the boilerplate assertion that the "complaint fails to state a claim upon which relief may be granted." This "defense" is meritless here; PROOF has not only pleaded all the elements of its breach of promissory note claim, but it has proffered evidence sufficient to establish them.

  3. HFGB's third affirmative defense is labeled "accord and satisfaction," but the Settlement Agreement cited in support of the defense has no bearing on the claims at issue. The defense of accord and satisfaction has two elements: the parties dispute a debt and the party seeking payment agrees to accept and receives a compromise payment in full settlement of the claim. *See Patel v. Orma,* 190 A.D.2d 782, 593 N.Y.S.2d 851 (2d Dep't 1993); *Lamb v. Emhart Corp.*, 47 F.3d 551, 556 (2d Cir. 1995) ("In order to prove an accord and satisfaction, the defendant must show that at the time of the agreement a good faith dispute existed over the existence of a debt or over an amount owed, and that the debtor and the creditor negotiated a contract of accord to settle the claim.").

  The Settlement Agreement is not evidence of an "accord and satisfaction" of the indebtedness under the Note, and it is certainly not a defense to liability. First, the Settlement Agreement has nothing to do with the Note. As is plain from its recitals, it was a settlement of HFGB CEO Jing An Wang's obligation to release his own shares of HFGB to holders of the Note, including PROOF, as additional compensation for his company's failure to meet income

targets. [SOF ¶ 11-13]. PROOF and other note holders entered into the Settlement Agreement because, in the face of Mr. Wang's refusal to perform on his contractual obligations, they decided it was less expensive to accede to Wang's demand for more time to meet those targets than to sue him for performance. [SOF ¶ 13]. Under the Settlement Agreement, PROOF received 675,000 of the shares from Wang. [Answer ¶ 19]. But nothing in the Settlement Agreement affected HFGB's obligations under the Note. HFGB confirmed this fact by its actions: it continued to pay principal to PROOF under the Amendment. [SOF ¶ 15].

In its Answer, HFGB alleges two share transfers as supposed evidence of the "accord and satisfaction": HFGB's issuance of 375,000 shares to PROOF in December 2009, and 675,000 shares to PROOF in July 2010. [Answer ¶¶ 18-19]. In fact, the 375,000-share issue constituted the consideration HFGB paid for the Amendment [SOF ¶ 19], and the 675,000 shares constituted Wang's cooperation under the Settlement Agreement. [SOF ¶ 10-14]. Neither transaction related to the obligation to pay principal and interest under the Note.

4. HFGB's fourth affirmative defense alleges "unclean hands." This equitable defense is makeweight, and should be stricken, as unclean hands is no defense to a claim at law to enforce a promissory note. *Hasbro Bradley v. Coopers & Lybrand*, 128 A.D.2d 218, 220, 515 N.Y.S.2d 461, 463 (1st Dep't 1987); *Manshion Joho Ctr. Co., Ltd. v. Manshion Joho Ctr., Inc.*, 24 A.D.3d 189, 190, 806 N.Y.S.2d 480, 482 (1st Dep't 2005); *Dayton Superior Corp. v. Spa Steel Products, Inc.*, 2010 WL 3825619, *5 (N.D.N.Y. Sept. 25, 2010) ("because Plaintiff seeks damages in an action at law, Defendant cannot avail itself of the affirmative defense of unclean hands").

5. HFGB's fifth affirmative defense asserts, in purely conclusory form, that the complaint is barred by the "equitable doctrines of release, failure of consideration and set off."

This defense, which is not supported by any factual support or elaboration, is insufficiently pleaded and cannot defeat summary judgment. *Seward & Kissel v. Smith Wilson Co., Inc.*, 814 F. Supp. 370 (S.D.N.Y. 1993).

6. HFGB's sixth affirmative defense claims that plaintiff does not possess the original note with any original signatures. The defense is utterly meritless, not only because the law does not require possession of the note with original signatures, but also because in its response to plaintiff's request to admit, HFGB admitted (i) that it issued the Note to PROOF, (ii) that the copy of the Note, attached as Exhibit A to the Complaint, is a true and correct copy, and (iii) that HFGB executed the Note. [SOF ¶ 5]. *Bennell Hanover Assocs. v. Neilson*, 215 A.D.2d 710, 627 N.Y.S.2d 439 (2d Dep't 1995) (defendant waived challenge to genuineness of note by not challenging signature in the answer; citing CPLR 3015); *Friedman v. Hyperion Assocs.*, 157 A.D.2d 963, 550 N.Y.S.2d 221 (3d Dep't 1990) (granting summary judgment based on "copy" of note).

7. HFGB's seventh affirmative defense claims that "the plaintiff has suffered no ascertainable loss." "Ascertainable loss" is not a known element of the claim. This "defense," if read to mean that plaintiff has not shown the amount due, is wholly rebutted by the evidence PROOF has submitted showing the unpaid balance of the Note. [SOF ¶ 22].

8. HFGB's eighth affirmative defense asserts, in purely conclusory form, that PROOF has "failed to adequately mitigate its damages." The defense makes no sense in the context of a promissory note enforcement case and, in any event, is not supported by any factual elaboration sufficient to meet the applicable pleading standards. Accordingly, the defense cannot defeat summary judgment.

9. HFGB's ninth affirmative defense alleges that the "amount demanded in the complaint is incorrect." This is not an affirmative defense, but part of PROOF's pleading burden. The amount due and the basis for the amount due is set out in SOF ¶¶ 21-22.

10. HFGB's tenth affirmative defense alleges, in purely conclusory form, that if the Court grants Plaintiff judgment, it will result in an "unjust enrichment." The defense makes no sense and, like many of the others, is purely conclusory and should be stricken.

11. HFGB's eleventh affirmative defense reserves the right to amend and assert additional defenses. This is not a defense. Nor does HFGB have the right to demand a modification of Rule 15 of the Federal Rules of Civil Procedure.

## V. CONCLUSION

For the reasons set forth above plaintiff requests that the Court grant it summary judgment on its claim to enforce the Note against HFGB and to dismiss defendant's eleven affirmative defenses. In the alternative, if the Court were to find an issue of fact with respect to plaintiff's prima facie case or one or more of defendant's affirmative defenses, plaintiff requests that the Court grant partial summary judgment dismissing those affirmative defenses that fail to survive the scrutiny of summary judgment.

Dated: New York, New York
November 2, 2011

SULLIVAN & WORCESTER LLP

By: /s/
Andrew T. Solomon
asolomon@sandw.com
Gretchen S. Silver
gsilver@sandw.com
1290 Avenue of the Americas, 29th Floor
New York, NY 10104
(212) 660-3000
*Attorneys for Plaintiff Professional Offshore Opportunities Fund, Ltd.*