UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x
:
PROFESSIONAL OFFSHORE
OPPORTUNITY FUND, LTD., a company :
registered under the laws of the British Virgin
Islands, :
                                                                          11-cv-04321-LAK
              Plaintiff, :

  -against- :

HUIFENG BIO-PHARMACEUTICAL
TECHNOLOGY, INC., a Nevada corporation, :

              Defendant. :

:
-------------------------------------------------------------------- x

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

SULLIVAN & WORCESTER LLP
Andrew T. Solomon
Gretchen S. Silver
1290 Avenue of the Americas, 29th Fl.
New York, NY 10104
(212) 660-3000

*Attorneys for Plaintiff*

Plaintiff Professional Offshore Opportunities Fund Limited ("PROOF"), by and through its counsel, Sullivan & Worcester LLP, submits this memorandum of law in reply to the opposition memorandum filed by defendant Huifeng ("HFGB").[1]

I.  SUMMARY OF ARGUMENT

   A. The facts establishing PROOF's prima facie case for summary judgment are not disputed: the validity of the $1,500,000 Secured Convertible Promissory Note (the "Note"), the demand for payment, and defendant's non-payment.

   B. HFGB does not dispute the dates or amounts of payments it made under the Note and the December 24, 2009 amendment (the "Amendment").  HFGB only disputes how those payments were applied under the transaction documents, which can be resolved on summary judgment since the facts concerning payments are undisputed and the amount due is calculated within the four corners of the Note and Amendment.

   C. HFGB has failed to raise a genuine issue of fact concerning its capacity defense under N.Y. B.C.L. § 1312.  HFGB's evidentiary presentation of PROOF's prior litigation activities in state and federal courts sitting in New York actually supports PROOF's contention that it invests money in international and interstate financing transactions. Moreover, because this particular transaction involves interstate commerce (not intrastate), under the Commerce Clause, a federal court sitting in diversity should not

---

[1] We cite to HFGB's opposition papers as follows: Defendant's Memorandum of Law in Opposition to Motion for Summary Judgment: "HFGB Mem."; Declaration of Jing'an Wang: "Wang Decl."; Defendant Huifeng Bio-Pharmaceutical Technology, Inc's Response to Plaintiff Professional Offshore Opportunity Fund, Ltd.'s Statement of Material Facts: "HFGB SOF"; and Declaration of Man Yam: "Yam Decl."  We cite to PROOF's papers using the same abbreviation conventions described in PROOF's Rule 56.1 Statement of Material Facts ("SOF").

apply New York's door closing statute to interfere with this Court's ability to decide this case.

II.   ARGUMENT

    A.   <u>HFGB Has Not Raised an Issue of Fact Concerning Its Payment History</u>

HFGB admits that it owes money to PROOF.[2] The dates and amount of HFGB's payments to PROOF ($938,450.91 in total) are also undisputed.[3] The only question is: "how much is due under the Note?"[4]

HFGB erroneously contends that a disputed issue of material fact exists based on the date of HFGB's first payment under the Amendment.[5] In fact, the parties agree, HFGB made the first payment on March 31, 2010 (applied April 1, 2010[6]). The real issue is PROOF's application of the payment as of the scheduled payment date: April 30, 2010,[7] which is consistent with the restrictions on pre-payments in the Note.[8] (as opposed to the date of actual payment. Using this method, PROOF calculated that HFGB owed it the last three scheduled payments of principal $577,500 ($180,000 + $180,000 + $217,500) plus the cumulative deficiency from underpayments for the prior underpayments made

---

[2] See Wang Decl. ¶ 14: "PROOF in its complaint demanded a judgment $697,500.00 from HFGB when in fact HFGB owed less than $450,000 to PROOF."

[3] SOF 20 (admitted).

[4] No evidentiary hearing or discovery is required to ascertain the amount due under the Note. Courts routinely perform this function based on affidavits after liability has been established. *See, e.g.*, *Benson v. Quicknowledge, Inc.*, No. 5:08-CV-1215 (GTS/DEP), 2010 WL 1930970, *3 (N.D.N.Y. May 10, 2010); *U.S. v. Fugle*, NO. 00-CV-0540E(SR), 2003 WL 251948, *2 (W.D.N.Y. January 25, 2003); *Sklaroff v. Rosenberg*, 125 F.Supp.2d 67, 74 n.3 (S.D.N.Y. 2000).

[5] HFGB Mem. at p. 4.

[6] SOF 20 (admitted).

[7] SOF 21 (disputed).

[8] Note (Ex. A to the Complaint) at ¶ 10. The Complaint is attached as Ex. A to the Solomon Dec.

2

by HFGB totaling $67,151.14.[9]  PROOF thus demanded a total of $644,651 plus interest on unpaid principal of $577,500 at the default rate of 15% per annum from the date of default: April 30, 2011.

Despite "disputing" PROOF's calculation of the amount due under the Note,[10] HFGB offers the Court no alternative calculation.  On that basis alone, the Court should accept PROOF's calculation.  But, in fact, PROOF's proposed method of calculation was conservative.  If HFGB wants the payments to be applied on the dates the payments were made, then based on a conventional amortization, where payments are applied to interest first and then principal, the calculation would look this:

---

[9] SOF 21 (disputed).  The $67,151.14 is calculated by subtracting the unpaid principal installments of $577,500 (April, May and June 2011) from the cumulative deficiency showed on $644,651.14.  The cumulative deficiency ("Excess/Deficiency" in SOF 21) is calculated as follows: (x) Scheduled Amount Due of principal + (y) accrued interest at 10% from 12/31/09 (which was the effective date of the Amendment) – (z) the aggregate of the monthly payments made by HFGB.  PROOF did not accrue interest on the excess/deficiency amount even though by convention payments would be applied to interest first, then principal, meaning that unpaid deficiency amounts normally would accrue interest.

[10] HFGB SOF 21.

| (i) Payment Date | (ii) Amount | (ii) Beg. Principal | (iv) Accrued Interest | (v) Ending Principal |
|---|---|---|---|---|
| 01-Apr-10 | 37,485.00 | 1,500,000.00 | 37,916.67 | 1,500,431.67 |
| 27-May-10 | 37,485.00 | 1,500,431.67 | 23,340.05 | 1,486,286.71 |
| 01-Jun-10 | 37,485.00 | 1,486,286.71 | 2,064.29 | 1,450,866.00 |
| 06-Jul-10 | 74,839.58 | 1,450,866.00 | 14,105.64 | 1,390,132.06 |
| 03-Aug-10 | 29,978.00 | 1,390,132.06 | 10,812.14 | 1,370,966.20 |
| 03-Aug-10 | 29,978.00 | 1,370,966.20 | - | 1,340,988.20 |
| 03-Sep-10 | 49,978.00 | 1,340,988.20 | 11,547.40 | 1,302,557.60 |
| 03-Sep-10 | 9,978.00 | 1,302,557.60 | - | 1,292,579.60 |
| 12-Oct-10 | 48,985.00 | 1,292,579.60 | 14,002.95 | 1,257,597.55 |
| 13-Oct-10 | 33,926.00 | 1,257,597.55 | 349.33 | 1,224,020.88 |
| 13-Oct-10 | 9,985.00 | 1,224,020.88 | - | 1,214,035.88 |
| 05-Nov-10 | 89,975.00 | 1,214,035.88 | 7,756.34 | 1,131,817.22 |
| 06-Dec-10 | 14,975.00 | 1,131,817.22 | 9,746.20 | 1,126,588.42 |
| 09-Dec-10 | 74,975.00 | 1,126,588.42 | 938.82 | 1,052,552.25 |
| 05-Jan-11 | 28,533.33 | 1,052,552.25 | 7,894.14 | 1,031,913.06 |
| 05-Jan-11 | 49,985.00 | 1,031,913.06 | - | 981,928.06 |
| 11-Jan-11 | 39,985.00 | 981,928.06 | 1,636.55 | 943,579.61 |
| 14-Feb-11 | 19,985.00 | 943,579.61 | 8,911.59 | 932,506.19 |
| 15-Feb-11 | 52,000.00 | 932,506.19 | 259.03 | 880,765.22 |
| 15-Feb-11 | 48,000.00 | 880,765.22 | - | 832,765.22 |
| 03-Mar-11 | 19,985.00 | 832,765.22 | 3,701.18 | 816,481.40 |
| 10-Mar-11 | 49,975.00 | 816,481.40 | 1,587.60 | 768,094.00 |
| 21-Mar-11 | 49,975.00 | 768,094.00 | 2,346.95 | 720,465.96 |
|  | 938,450.91 |  |  |  |

Based on the calculation method,[11] the principal amount due as of March 21, 2011 (the date of last payment) would be $720,465.96 (significantly higher than PROOF's calculation).

HFGB makes three other arguments about the amount due under the Note, but they are all makeweight.

---

[11] Source and key to calculation: (i): SOF 20; (ii) SOF 20; (iii) SOF 18; (iv) Beg. Prin. x 10% * (payment date – 12/31/09)/360 days (*see* Note 1(d)); (v) Beg. Prin. – (Payment Amount – Accrued Interest).

First, HFGB identifies a $150,000 escrow set-aside for investor relations expenses and argues that no interest should accrue on that amount.[12]  But the transaction documents are directly contrary to HFGB's position.  By way of background, under the Note, $150,000 ($200,000 in total from the other investors)[13] of the $1,500,000 loan proceeds from PROOF was specifically earmarked for "hiring an investor relations firm in the United States."[14]  In a side letter, dated December 21, 2007, HFGB agreed that the $200,000 would be held in escrow by Sullivan & Worcester LLP and that the escrow agent "shall not release the $200,000 … to be devoted for investor relations, until receiving PROOF's written consent following the Company's selection of an investor relations firm in the United States."[15]  HFGB's Wang complains that PROOF refused to release the $150,000 and has charged interest on it.[16]  But Wang provides no evidence or particulars as to the circumstances of HFGB's alleged demand for its release or PROOF's alleged refusal.  Nor does Wang make any argument as to why these funds, which were advanced under the loan and then placed in escrow for a particular purpose, should not accrue interest.  Quite plainly under the Note, the principal is the full $1,500,000 and it accrues interest.  HFGB, moreover, subsequently reaffirmed the $1,500,000 principal balance in Exhibit A to the Amendment[17] and also admitted that principal amount in this litigation.[18]

---

[12] HFGB Mem. at 7.

[13] See December 29, 2007 side letter from HFGB, attached to the Amended Answer ("Answer") as Ex. C  The Answer is attached to the Solomon Dec. as Ex. B.

[14] Securities Purchase Agreement (Answer Ex. A) § 3.10.

[15] See December 21, 2007 side letter from HFGB (Answer Ex. B).

[16] Wang Decl. ¶ 5-6.

[17] Complaint Ex. B.

[18] SOF 5 (admitted).

5

Second, equally unavailing is Wang's argument that HFGB only received $1,237,875 out of the $1,500,000 in stated principal. Here, Wang is not being candid with the Court. HFGB's own papers (Answer Ex. C) show precisely how the $1,500,000 proceeds were disbursed:

| Description | Debit | Credit | Source | Citation |
|---|---|---|---|---|
| Principal | | $1,500,000 | Note | Complaint Ex. A |
| Less I/R Escrow | $150,000 | | Side Letter (12/29/07) | Answer Ex. C |
| Less Legal | 30,000 | | Note § 6.1 | Complaint Ex. A |
| Less Placement Agent Fees | 82,125 | -262,125 | Side Letter (12/29/07) | Answer Ex. C |
| **Net Disbursement** | | **$1,237,875** | | |

Finally, contrary to the plain language of the Settlement Agreement, Wang argues that the distribution of 675,000 shares of stock to PROOF under the Settlement Agreement[19] was to "settle the interest on the note as well as issues with respect to the net income as described in the Escrow Agreement."[20] In fact, nothing in the Settlement Agreement pertains to accrued but unpaid interest or future interest. The only obligation of HFGB relieved by the Settlement Agreement was its "net income performance targets."[21]

B.  <u>Summary Judgment Should Not Be Delayed or Denied Under Fed.R.Civ.P. 56(d)</u>

HFGB has not established a basis to defer or deny summary judgment on the basis of Rule 56(d) of the Federal Rules of Civil Procedure. Rule 56(d) provides: "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," the Court can defer or deny the motion or allow additional time for discovery.

---

[19] SOF 14 (admitted). The Settlement Agreement is attached as Ex. D to the Answer.

[20] Wang Decl. ¶ 12.

[21] Settlement Agreement at ¶ 2.

In opposition to the motion, under the heading, "Relief Under Rule 56(f) [sic]," HFGB's attorney contends that further discovery is needed "in order to determine what payments of money and transfer of stock were received by PROOF."[22]  In fact, the dates and amounts of payments and stock issuance are undisputed.  Defendant's counsel also seeks discovery "[to determine" the exact relationship between the plaintiff and New York and plaintiff's conduction of business in New York and the contact plaintiff has with New York." (*Id.*)  This discovery goes to HFGB's capacity defense under N.Y.B.C.L. § 1312.  As shown in the next section, however, any discovery on this point would be completely futile.

  C.  <u>HFGB Has Not Raised A Genuine Issue of Fact Concerning PROOF's Capacity to Sue Under N.Y. B.C.L. § 1312</u>

Plaintiff has adduced no evidence that PROOF has been doing business in New York such that PROOF is required to be registered to business under New York law.  Quite plainly, HFGB is seeking to engage in the type of "fishing expedition" for delay that the Second Circuit has expressly condemned in this very arena (N.Y. B.C.L. § 1312).  *Grand Bahama Petro. Co. v. Asiatic Petro. Corp.*, 550 F.2d 1320, 1327 (2d Cir. 1977).

In a strained attempt to create the false appearance that PROOF has been engaging in substantial business in New York, HFGB cites a number of state and federal court cases in New York where PROOF is a party.  HFGB cites no case, however, that holds that use of New York courts is a factor under N.Y.B.C.L. § 1312.  Indeed, such a finding would be contrary to New York's policy of opening its courts to international commercial disputes even where no New York person or entity is a party to the case.  See N.Y. G.O.L. § 5-1401 to 1402; *IRB-Brazil Resseguros, SA v. Inepar Investments, SA*, 83 A.D. 3d 573, 922 N.Y.S.2d 308 (1st Dept 2011).

---

[22] Yam Decl. ¶ 18.

Moreover, as shown in the following chart, the lawsuits that HFGB cites only confirm the interstate (not intrastate) nature of PROOF's investment business:

**PROOF LAWSUITS INVOLVING INVESTMENTS**[23]

| Plaintiff | Defendant | Index No. | Court | D. Place of Formation | D. Principal Place of Business | Source |
|---|---|---|---|---|---|---|
| PROOF | Franklin Tower Enterprises Inc. | 08 CV 3767(DC) | SDNY | Nevada | New Hamphsire | PACER |
| PROOF | Amerex Group, Inc. | 08 CV 5643 (SS) | SDNY | Delaware | | PACER |
| PROOF | Zealous Trading Group | 650260/2008 | NY County | Nevada | California | EDGAR |
| PROOF | National Maintenance Group | 601039/2009 | NY County | Delaware | Arizona | OTC Pink Sheets |
| PROOF | Infosmart Group, Inc. | 112894/2010 | NY County | California | Hong Kong | EDGAR |
| PROOF | Global Home Group, LLC | 023805/2009 | Suffolk County | New York | New York | S&W Files |
| PROOF | Lloyd J. Braider | 008296/2011 | Suffolk County | New York | New York | S&W Files |

Even if HFGB could establish that PROOF is required to be registered under New York law based on its intrastate business activities, it would be no bar to PROOF's capacity to bring this lawsuit against HFGB.

A state's door closing statute is subject to the constitutional limits of the Commerce Clause of the United States Constitution.[24]  *See Allenberg Cotton Co. v. Pittman*, 419 U.S. 20, 95 S.Ct. 260 (1974).  This principle, now engrained in New York jurisprudence, was established in companion cases decided in 1917 by Judge Cardozo:  *Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 115 N.E. 915 (1917), and *Int'l Text Book Co. v. Tone,* 220 N.Y. 313, 115 N.E. 914 (1917).

---

[23] See accompanying Reply Declaration of Andrew T. Solomon, dated December 5, 2011.

[24] U.S. Const. art. 1, § 8, cl. 3.

Specifically, in *Int'l Text Book,* Judge Cardozo explained the interplay between New York's "door closing" statute and the limitations imposed by the Commerce Clause:

> The power of a state to exclude a foreign corporation is subject to the limitation that freedom of interstate commerce is not to be impaired. The corporation may come here without a license when the purposes of interstate business require its presence. Statutes calling for a license will be construed in subordination to that rule.

220 N.Y. 313, 318, 115 N.E. 914 (internal citations omitted). The Second Circuit has confirmed the same point for federal courts sitting in a diversity action: "*Allenberg* stands for the proposition that a state "door closing" statute may not impede a diversity action concerning interstate or foreign commerce … brought in a federal court." *Grand Bahama*, 550 F.2d at 1326; *see also  S & K Sales Co. v. Nike, Inc.*, 816 F. 2d 843 (2nd Cir. 1987). Therefore, even if an out-of-state company is required to be licensed within the state based on its purely intrastate activities, *see, e.g., Eli Lilly & Co. v. Sav-On-Drugs, Inc.,* 366 U.S. 276, 81 S.Ct. 1316 (1961), the state's door closing statute cannot impede access to its own state courts, much less federal courts, based on an interstate transaction, *Sioux Remedy Co. v. F.M. Cope,* 235 U.S. 197, 202-04, 35 S.Ct. 57 (1914); *In re. Shima*, 113 Misc. 612, 186 N.Y.S.154 (Sup. Ct. N.Y. County 1920). In *Shima*, which involved a suit by a Japanese company for breach of contract against New York defendants arising out of a contract to supply castor oil from the Orient to New York, the Court explained why the "door closing" statute was no bar:

> [Defendant] makes much of the fact, if it be such, that the petitioner does a considerable local business in this state, and that it has a permanent office here. It is wholly immaterial what other business the petitioner does here, if the transaction in question is one in foreign commerce.

113 Misc. at 614-15, 186 N.Y.S. at 155.

With these principles in mind, it follows that HFGB, a Nevada company operating in China, cannot invoke N.Y. B.C.L. § 1312 as a bar to PROOF's access to this court. Whether

9

discovery might reveal other in-state activities of PROOF is of no moment to this international financing transaction. Indeed, even if PROOF engaged in other activities in New York of a character and magnitude such that it would be required to obtain authorization to do business in New York in order to access its courts, that capacity limitation is subordinate to the Commerce Clause and cannot bar this suit in this Court.

III.  CONCLUSION

For the reasons stated above and in PROOF's opening memorandum, the Court should grant summary judgment to PROOF. HFGB's opposition (like its prior motion to transfer venue) is a delaying tactic, nothing more.

Dated:  New York, New York                         SULLIVAN & WORCESTER LLP
        December 5, 2011

                                                   By: /s/
                                                      Andrew T. Solomon
                                                      asolomon@sandw.com
                                                      Gretchen S. Silver
                                                      gsilver@sandw.com
                                                      1290 Avenue of the Americas, 29th Floor
                                                      New York, NY 10104
                                                      (212) 660-3000
                                                      *Attorneys for Plaintiff Professional Offshore Opportunities Fund, Ltd.*