UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
PROFESSIONAL OFFSHORE OPPORTUNITY FUND, LTD.,

               Plaintiff,

        -against-                                  11 Civ. 4321 (LAK)

HUIFENG BIO-PHARMACEUTICAL TECHNOLOGY, INC.,

               Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM AND ORDER

LEWIS A. KAPLAN, *District Judge.*

        This is an action to enforce a defaulted $1.5 million Secured Convertible Promissory Note issued by defendant Huifeng Biol-Pharmaceutical Technology, Inc. ("HFGB") to plaintiff Professional Offshore Opportunity Fund, Ltd. ("PROOF").   The matter is before the Court on PROOF's motion for summary judgment in an aggregate amount of $644,651.14, consisting of (a) unpaid principal of $577,500, and (b) prior interest shortfall of $67,151.14, together with (c) interest on the unpaid principal at the rate of 10 percent from March 31, 2011 to the date of default (April 30, 2011), and at the default rate of 15 percent from April 30, 2011 to the date of judgment, and (d) costs of enforcement, including attorneys' fees, in an amount to be determined.   HFGB concedes that it in fact owes principal of $561,549.09.[1] The principal matters for consideration here are the calculation of the amount due and owing and HFBG's contention that the New York door closing statute, N.Y. Bus. Corp. L. § 1312, precludes PROOF from maintaining this action.   Accordingly, the Court

---

[1]     HFBG 56.1 St. ¶ 22.

assumes familiarity with the facts and operative documents set for in the motion papers and proceeds to deal with the matters at issue starting, for the sake of convenience, with the least controversial and proceeding to the marginally more substantial.

      1.    HFBG's answer pleads a laundry list of affirmative defenses.  PROOF seeks summary judgment as to all of them, pointing out that these all are matters as to which HFBG would bear the burden of proof at trial and, in consequence, that PROOF is entitled to summary judgment on these points absent the production by HFBG of admissible evidence that, if believed and drawing all reasonable inferences therefrom, would entitle HFBG to prevail on them.  HFBG has not even responded to the argument, let alone come forward with any evidence.  Accordingly, all of the affirmative defenses (save the door closing statute argument, which is dealt with separately), are dismissed.

      2.    PROOF's motion is supported by a Rule 56.1 statement of material facts, each averment of which is supported by citation of admissible evidence.  HFBG submitted a responsive statement in which it purported to dispute only paragraphs 7, 10-12, 17, 19, 21, and part of 22 of PROOF's 56.1 statement.  Moreover, HFBG's responses to paragraphs 11, 12, 21 and 22 do not cite any evidence in support of its contention that PROOF's allegations are disputed, as the Rule requires.  S.D.N.Y. Civ. R. 56.1(d).  Accordingly, PROOF's averments in those paragraphs are deemed admitted.  In sum, therefore, paragraphs 1-6, 8-9, 11-18, and 20-22 are explicitly admitted or deemed admitted.  The remaining portions of its statement, which deal principally, but not exclusively, with the import of documents, the content of which is undisputed, are dealt with below to the extent relevant.

3.      HFBG argues that PROOF is a foreign corporation doing business in New York without having qualified to do so and that it therefore may not maintain this action by virtue of N.Y  Bus. Corp. L. § 1312, which provides in relevant part that "a foreign corporation doing business in this state without authority shall not maintain any action . . . in this state unless and until such corporation has been authorized to do business in this state and . . . has paid to the state all [relevant] fees and taxes."  As PROOF is a company organized under the laws of the British Virgin Islands with its principal place of business in that jurisdiction, the only question is whether it is doing business in New York within the meaning of the statute.

HFBG relies upon the following facts drawn principally from PROOF's papers:  (a) PROOF's investments are managed for it by an investment manager based in Nassau County, New York, and (b) it has commenced 8 lawsuits (including this one) in New York State and federal courts.[2]  These contacts, whether taken singly or in combination, are not sufficient to raise a genuine issue of material fact as to whether PROOF is "doing business" in New York within the meaning of Section 1312.  Even more importantly, the door closing statute, even when the plaintiff is doing business in New York, may not constitutionally be applied to close the doors of a federal court sitting in New York to "a diversity action concerning interstate or foreign commerce."[3]  As this

---

[2]

       Its memorandum claims also that "its alleged [*sic*] lending of money to defendant is not its first and only transaction in New York" (DI 25, at 12), a proposition for which it cites only "See Yam Decl."  A review of the Yam declaration, however, yields little or no support for the assertion save the existence of listings of lawsuits to which PROOF has been a party without much indication of what they were about.  The evidence, moreover, shows that of the seven cases involving investments, five were brought against non-New York defendants. DI 31.

[3]

       *Grand Bahama Petro. Co. v. Asiatic Petro. Corp.*, 550 F.2d 1320, 1326 (2d Cir. 1977); accord *A.I. Trade Fin., Inc. v. Petra Bank,* 989 F.2d 76, 84 (2d Cir. 1993); *S & K Sales Co. v. Nike, Inc.*, 816 F. 2d 843 (2nd Cir. 1987).

4

is a diversity suit by a British Virgin Islands company against a Nevada corporation with its principal place in China regarding a loan to that foreign corporation, the interstate or foreign character of the commerce at issue is undeniable.  The BCL § 1312 argument is frivolous.


4.       This brings us to the main event, the issue as to the amount due and owing on the note.  While filled with incantations of the phrase "issue of fact," defendant's papers are of no real help on this issue, either to itself or to the Court..

PROOF's Rule 56.1 statement and the note itself state the facts with respect to the amount as follows:

(a)       The note, dated December 31, 2007, was issued in the principal amount of $1.5 million and was due two years later, on December 31, 2009.  Pl. 56.1 St. ¶¶ 5, 7.

(b)       Interest at the rate of 10 percent per annum was payable in arrears on the first day of June, September and December while the note was outstanding with a final payment due on the maturity date.  Interest was payable in cash or, at HFBG's option and subject to a limitation, in common stock of the borrower.  Note[4] § 1(a).

(c)       The principal was due on the maturity date.  Note § 1(b).  The note makes no reference to any option to pay principal in the form of common stock.

(d)       HFBG was unable to pay the principal when the note came due.  The parties therefore entered into an amendment effective December 24, 2009.  Pl. 56.1

---

[4]     The note is Exhibit A to the complaint.

St. ¶¶ 8-9.[5]  Insofar as is relevant here, the Amendment (i) changed the maturity date of the note to June 30, 2011 in accordance with a specific repayment schedule (Amendment ¶¶ 1a-1b), and (ii) obliged HFBG to issue 375,000 shares of its common stock to PROOF in consideration of PROOF's entry into the Amendment (*id.* ¶ 3 & Ex. A).  *Accord* Pl. 56.1 St. ¶¶ 16-19.[6]  The payment schedule was as follows:[7]

| Payment Due Date | Amount Due |
|---|---|
| April 30, 2010 | 2.5% |
| May 30, 2010 | 2.5% |
| June 30, 2010 | 2.5% |
| July 30, 2010 | 4.0% |
| August 31, 2010 | 4.0% |
| September 30, 2010 | 4.0% |
| October 31, 2010 | 6.0% |
| November 30, 2010 | 6.0% |

---

[5]

The amendment is Exhibit B to the complaint and is referred to hereafter as the "Amendment."

[6]

Paragraph 19 of HFBG's Rule 56.1 statement states that "[t]he amendment to the note does not state that the 375,000 shares granted to PROOF constituted *additional* consideration." (Emphasis added)  In fact, however, they are mistaken.  The paragraph 3 of the Amendment states that the additional common stock was issued "[a]s consideration for the Lenders entry into" the Amendment, which means that that stock was not issued for a different purpose such as a payment of principal or interest on the note.  Moreover, if there were any doubt about this, and there is not, it would have been eliminated by HFBG's 2009 Form 10-K, which reported the transaction by stating that "[o]n December 24, 2009, the Company [HFBG] issued 450,000 shares of common stock to the Note holders [375,000 to PROOF] in consideration of entering into the amendment of the Notes."  Berger Decl. [DI 16] Ex. G, at 12.

[7]

*Compare* Pl. 56.1 St. ¶ 18 *with* Def. 56.1 St. ¶ 18.

| Payment Due Date | Amount Due |
|---|---:|
| December 31, 2010 | 6.0% |
| January 31, 2011 | 8.0% |
| February 28, 2011 | 8.0% |
| March 31, 2011 | 8.0% |
| April 30, 2011 | 12.0% |
| May 31, 2011 | 12.0% |
| June 30, 2011 | 12.0% |
| **Total** | **100.0%** |

   e.  From April 1, 2010 (the first payment date under the Amendment) through March 2011 (the default month), HFBG paid PROOF the aggregate sum of $938,450.91 on the following dates and in the following amounts:[8]

| Payment Date | Amount |
|---|---:|
| April 1, 2010 | $37,485.00 |
| May 27, 2010 | $37,485.00 |
| June 1, 2010 | $37,485.00 |
| July 6, 2010 | $74,839.58 |
| August 3, 2010 | $29,978.00 |
| August 3, 2010 | $29,978.00 |
| September 3, 2010 | $49,978.00 |
| October 12, 2010 | $48,985.00 |

---

[8]   *Compare* Pl. 56.1 St. ¶ 20 *with* Def. 56.1 St. ¶ 20.

7

| Payment Date | Amount |
|---|---|
| October 13, 2010 | $33,926.00 |
| October 13, 2010 | $9,985.00 |
| November 5, 2010 | $89,975.00 |
| December 6, 2010 | $14,975.00 |
| December 9, 2010 | $74,975.00 |
| January 5, 2011 | $28,533.33 |
| January 5, 2011 | $49,985.00 |
| January 11, 2011 | $39,985.00 |
| February 14, 2011 | $19,985.00 |
| February 15, 2011 | $52,000.00 |
| February 15, 2011 | $48,000.00 |
| March 3, 2011 | $19,985.00 |
| March 10, 2011 | $49,975.00 |
| March 21, 2011 | $49,975.00 |
| **Total** | **$938,450.91** |

        f.      Interest on the payments under the Amendment accrued at 10 percent
per annum from the date of the Amendment to the payment date.  HFGB made no
interest payments under the Amendment, although it overpaid scheduled principal in
some months, which PROOF applied to interest.  The table set out in paragraph 21
of PROOF's Rule 56.1 statement accurately sets out HFGB's payments, the scheduled
payment amounts, the accrued interest, and any over- or underpayment, which
PROOF applied to principal.[9]  The table establishes that the deficiency owed on the

_____

        9

        Pl. 56. 1 St. ¶ 21.  HFGB's Rule 56.1 Statement responds to this averment of plaintiff's
statement with the single word "Disputed."  It does not state in what respect the plaintiff's
statement is disputed and cites no evidence to support its position.  Accordingly, under Rule

note is $644,651.14.

        g.    The note provides for a default rate of interest of 15 percent per annum from the date of default (April 30, 2011) to the date of payment and attorneys' fees for the costs of collection.  Default interest therefore began to accrue  on April 30, 2011 until the date of judgment at the rate of $237.32 ($577,500 x .15/365) per day.

        5.    Although its papers are something of a muddle, HFGB nevertheless appears to make a number of arguments in an effort to reduce the amount owed and to create a genuine issue of material fact.

        a.    First, HFGB contends that PROOF never released $150,000 of the loan amount, holding it instead. in an escrow account held by its attorneys for investment relations, yet charged interest on it.  Wang Decl. ¶¶ 5-6.    In fact, however, that argument is entirely refuted by the documents.  In a side letter, dated December 21, 2007, HFGB agreed that the money (totaling, with funds provided by other lenders, $200,000) would be held in escrow for this purpose.  Am. Ans. Ex. B.  Thus, the money was advanced under the note and set aside for a particular purpose.  The note principal concededly was $1.5 million, which included the $150,000 placed

---

56.1, plaintiff's averment is admitted.  In any case, HFBG explicitly admitted the accuracy of the first and third columns of the table in paragraph 21 of plaintiff's Rule 56.1 statement (payment date and scheduled  amount due) in paragraph 18 of its Rule 56.1 statement.  It explicitly admitted the amounts and dates of its payments in paragraph 20.  The fourth and fifth columns of the table (accrued interest at 10 percent from December 31, 2009, and the excess or deficiency over or under the scheduled amount due for each payment date) are simply arithmetic computations of the relationship between the admitted aggregate monthly payment amounts and the scheduled amount due.  Accordingly, there is no genuine issue as to any of the facts contained in the table set out in paragraph 21 of plaintiff's Rule 56.1 statement.

in escrow.  Interest was computed on that principal.  Indeed, HFGB later reaffirmed the $1,5 million principal amount in Exhibit A to the amendment and has admitted it in this litigation.

        b.      HFGB next contends that HFGB received only $1,237,875 out of the $1.5 million in stated principal.  Its answer, however, shows exactly how the $1.5 million was disbursed:  There is no merit to the argument.

| Description | Debit | Credit | Source | Citation |
|---|---|---|---|---|
| Principal | | $1,500,000 | Note | Cpt Ex. A |
| Less I/R Escrow | $150,000 | | Side letter 12/29/07 | Am Ans. Ex. C. |
| Less legal | $30,000 | | Note § 6.1 | Cpt. Ex. A |
| Placement agent | $82,125 | | Side letter 12/29/07 | Am. Ans. Ex. C |
| **Net disbursement** | | **$1,237,875** | | |

        c.      HFGB argues also that the distribution of 675,000 shares of stock to PROOF was to "settle the interest on the Note as well as issues with respect to the net income as described in the Escrow Agreement."  Wang Decl. ¶ 12.

        This is a reference to an escrow agreement, dated December 17, 2007 (Solomon Decl. [DI 15, Ex. 2] Ex. B), which reflects the fact that Mr. Wang, HFGB's chief executive officer, placed 1.4 million of his personal shares of HFGB's common stock into escrow with the understanding that they would be distributed to PROOF and others or, alternatively, to Wang depending upon whether HFGB's fiscal 2008 net income fell short of or exceeded $3.8 million.

        In June 2010, the parties entered into yet another agreement, the so-

called Settlement Agreement and Release (Berger Decl. Ex. C) (the "Settlement

Agreement") pursuant to which they agreed to a resolution of issues relating to the

release of Mr. Wang's personal shares from that escrow,[10] the salient feature of which

for present purposes was that 675,000 of the 1.4 million shares ultimately were

---

[10]

PROOF's Rule 56.1 statement avers that Mr. Wang had been in default of his obligation to release the entire 1.4 million shares from escrow at the time the Settlement Agreement was executed. Pl. 56.1 St. ¶ 10. HFBG's statement purports to dispute this, citing "Settlement Agreement Recitals." Def. 56.1 St. ¶ 10. In fact, however, the settlement agreement recitals unequivocally support PROOF on this point. The third and fourth recitals, to which all parties agreed (§ 1), stated:

> "WHEREAS, pursuant to the Escrow Agreement . . . the Parties have agreed that the [1.4 million] Shares will be distributed pro rata to the Buyers if net income of the Company for the fiscal year 2008 is below $3,800,000;
>
> "WHEREAS, according to the Company's audited financial statements for the fiscal year 2008, the net income of the Company for fiscal year 2008 is below $3,800,000."

Thus, the parties agreed and reaffirmed that the condition to Mr. Wang's obligation to release the 1.4 million shares had been satisfied. Likewise, paragraphs 11 and 12 of PROOF's Rule 56.1 statement averred that there was no dispute at the time of the Settlement Agreement that Mr. Wang was in default of his obligation to release the shares, but that he refused to perform solely to gain leverage. While HFBG's responsive statement states "disputed" in response to both averments, it cites no evidence or other support for its denial and thus is deemed to have admitted PROOF's averments. Even Mr. Wang's declaration fails to dispute the fact that he was in default of his obligation to release the entire 1.4 million shares at the time of the Settlement Agreement, saying only that PROOF received the 675,000 shares "to settle the interest on the Note as well as issues with respect to the net income as described in the Escrow Agreement." Wang Decl. ¶ 12. But this is inconsistent with the Settlement Agreement in the only arguably pertinent respect and entirely conclusory in all respects. The Settlement Agreement makes no reference whatever to the settlement of interest on the note, making clear instead that the agreement to accept the 675,000 shares distributed to PROOF (part of the 900,000 released to all of the buyers) was in exchange for the resolution of "issues releasing the Shares from escrow and any of Buyers' claims against the Company (the 'Escrow Shares Claims') in accordance with this agreement." (Settlement Agreement fifth recital) Moreover, if the Settlement Agreement were construed to embrace any claims the buyers (all lenders) had against the company, the consequence would have been release of the note, both as to principal and interest. Yet HFBG does not claim that it released the obligation to pay principal, and it does not suggest what it might have meant as far as settling the interest on the note. Its argument simply makes no sense and is unsupported by any evidence.

released to PROOF.[11]

        d.      In sum, none of HFBG's arguments raises a genuine issue of material fact.

        6.      HFBG finally argues that summary judgment should be withheld under Fed. R. Civ. P. 56(d), formerly Rule 56(f), in order to permit discovery to facilitate its raising a genuine issue of material fact.  This argument is without merit.

        a.      Rule 56(d) requires far more than simply a claim that the non-moving party has not had or wants more discovery.  Our Circuit has made clear what is necessary to open the door in such circumstances:

> "Rule 56(f) provides:
>
> "Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition [to a motion for summary judgment], the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.'
>
> "Thus, as we often have said, a party resisting summary judgment on the ground that it needs discovery in order to defeat the motion must submit an affidavit showing (1) what facts are sought [to resist the motion] and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts. *Meloff v. New York Life Ins. Co.,* 51 F.3d 372, 375 (2d Cir.1995) (quoting *Hudson River Sloop Clearwater, Inc. v. Department of Navy,* 891 F.2d 414, 422 (2d Cir.1989)); *accord, Paddington Partners v. Bouchard,* 34 F.3d 1132, 1137-38 (2d Cir.1994); *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.,* 769

---

[11] *Compare* Pl. 56.1 St. ¶¶ 13-14 *with* Def. 56.1 St. ¶¶ 14.

F.2d 919, 926 (2d Cir.1985)."[12]

Thus, the Court must determine whether HFBG's declarations satisfy each of these criteria with respect to any matter material to this motion.

        b.      HFBG first argues that it "would likely need" to depose PROOF's Mr. Berger "in order to determine (i) exactly what payments of money and transfer of stock were received by PROOF from defendant and (ii) the exact relationship between the plaintiff and New York and plaintiff's conduction [*sic*] of business in New York and the contacts plaintiff has with New York." Yam Decl. ¶ 18. But HFBG is entirely knowledgeable about what it paid to PROOF, both in cash and in stock, and thus needs no discovery on that point. Moreover, it has admitted to the penny and to the share exactly what it parted with. The question of PROOF's relationship to New York is immaterial in view of the fact that this is "a diversity action concerning interstate or foreign commerce… brought in a federal court" and thus cannot be delayed or dismissed under N.Y. Bus. Corp. L. § 1312 regardless of PROOF's connection to New York. And even if its connection to New York were not immaterial here, HFBG has failed to show how a deposition of Mr. Berger might "reasonably [be] expected to create a genuine issue of material fact." *See generally supra* ¶ 3.

        c.      HFBG asserts in conclusory terms that it "may wish to depose various non-parties . . . to obtain a complete picture," that the testimony of "the party's transactional attorney may be required regarding the transfer of stock by defendant to

---

[12] *Concourse Rehab. & Nursing Ctr., Inc.,* 249 F.3d at 146 n.3 (quoting *Gurary v. Winehouse,* 190 F.3d 37, 43-44 (2d Cir. 1999) (internal quotation marks omitted)). *Accord, Boomer v. Goord,* 283 Fed. Appx. 855, 857 (2d Cir. 2008); *Haran v. Dow Jones, Inc.,* 216 F.3d 1072 (table), 2000 WL 777982, at *3 (2d Cir. 2000); *Feingold v. Hankin,* 91 Fed. Appx. 176, 178 (2d Cir. 2004).

13

plaintiff," and that defendant for unspecified reasons "is unable to properly oppose all of the plaintiff's allegations, including the primary allegations that defendant breached the promissory note." Yam Decl. ¶¶ 19-21. But conclusory allegations like this quite plainly are insufficient under Rule 56(d). Moreover, HFBG has conceded that it breached the promissory note – the only issue it even attempted to raise was the amount due and owing.

7.      It is quite plain that there is no genuine issue of material fact and that plaintiff is entitled to judgment as a matter of law. Its motion for summary judgment [DI 14] is granted in all respects. Plaintiff shall have judgment in the aggregate amount of $649,949.64 (consisting of  (a) unpaid principal of $577,500,(b) the prior interest shortfall of $67,151.14, together with (c) interest on the unpaid principal at the rate of 10 percent from March 31, 2011 to the date of default (April 30, 2011) in the amount of $5,298.50 plus interest at the default rate of interest of 15 percent per annum from April 30, 2011 ($237.32 per day) on the unpaid principal amount of $577,500 to the date of judgment. In addition, PROOF, in accordance with Section 11 of the note, shall recover its costs and expenses of enforcement (including reasonable attorneys' fees and their costs), together with interest at the Prime Rate (as defined in the note). Any application to recover costs and expenses of enforcement shall be made as provided and within the time specified in Fed. R. Civ. P. 54.

SO ORDERED.

Dated:      April 17, 2012

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)